Filed 4/26/23  P. v. Hinton CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ERIC HINTON,<br><br>  Defendant and Appellant. | B318247<br><br>(Los Angeles County Super. Ct. No. TA011942) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Reversed.

Cuauhtemoc Ortega, Federal Public Defender, and Jennifer L. Molayem and Michael Petersen, Deputy Federal Public Defenders; Tracy Dressner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, and Charles S. Lee and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

In 1988, defendant and appellant Eric Hinton (defendant) participated in a failed drug deal that resulted in the shooting deaths of Tenoa Stevenson (Stevenson), Landis Barnes (Barnes), and Albert Brown (Brown).  Defendant was tried and found guilty of three counts of first degree murder.  In 2021, defendant petitioned for resentencing under Penal Code section 1172.6 (former Penal Code section 1170.95).[1]  The trial court found defendant was ineligible for relief as a matter of law and denied defendant's petition without issuing an order to show cause.  We are asked to decide whether the trial court correctly concluded defendant is ineligible for relief as a matter of law—chiefly because the prosecutor's closing argument remedied an otherwise ambiguous special circumstance jury instruction concerning the necessity of proving an intent to kill.

## I.  BACKGROUND

### A.    *The Offense Conduct*

On May 24, 1988, defendant drove four wrapped packages of a white, powdery, cocaine-like substance[2] to a planned drug deal.  The prearranged meeting place was a 7-Eleven parking lot in Monterey Park.

Defendant arrived with another man, Steven Hicks. Barnes, one of the murder victims and the ostensible seller, drove to the meeting location in his BMW and Stevenson, the buyer, arrived separately and accompanied by his cousin, Brown.

---

[1]    Undesignated statutory references that follow are to the Penal Code.

[2]    It was later determined that the substance in the bundles was not cocaine.

Stevenson suggested that they move the transaction to a nearby Best Western motel. The other parties agreed.

At the motel, everyone went inside, and defendant put the bag with the purported cocaine on the dresser and then went to stand near the door. While Stevenson and Cunningham talked off to the side, Barnes and Brown walked to the dresser and tested the product to verify it was cocaine. At that point, gunfire broke out and Barnes and Brown were killed. Stevenson was severely injured and fled the motel. Defendant and Hicks gave chase in Barnes' BMW. Stevenson ultimately ran into a nearby used car lot and the BMW's passenger exited the car and fatally shot Stevenson in the chest at point blank range.[3]

### B.    Criminal Convictions

Defendant was charged with murdering Stevenson, Brown, and Barnes; attempted first degree residential robbery; and selling a substance purporting to be a controlled substance (Health & Safety Code section 11355). In connection with the murder charges, the information alleged several special circumstances: multiple murders (section 190.2, subdivision (a)(3)); commission of the Barnes and Brown murders while engaged in the commission or attempted commission of a robbery (section 190.2, subdivision (a)(17)(A)) and burglary (section 190.2, subdivision (a)(17)(G)); and commission of a prior first degree murder (section 190.2, subdivision (a)(2)). The jury convicted

---

[3]    A witness at defendant's later trial provided a description of the passenger that is consistent with defendant's appearance. No one affirmatively identified defendant as the passenger, however.

3

defendant on all counts and found true all special circumstances. Defendant was sentenced to death. The California Supreme Court affirmed defendant's convictions and the judgment of death. (*People v. Hinton* (2006) 37 Cal.4th 839.) We take judicial notice that the conviction was recently reduced, upon the People's recommendation for resentencing, to life in prison without the possibility of parole.

### C. Defendant's Section 1172.6 Petition

In June 2021, defendant, represented by counsel, filed a section 1172.6 petition for resentencing. Defendant averred he met the requirements for resentencing because he was tried and convicted principally on a felony murder theory and could not be convicted of first or second degree murder under current law. Specifically, he argued he was not: the actual killer, an aider and abettor in the commission of murder who acted with intent to kill, or a major participant in the underlying felony acting with reckless indifference to human life.[4]

The People opposed the petition, arguing defendant was not entitled to relief under section 1172.6 as a matter of law because the jury had been instructed with CALJIC No. 8.80 and had "found that [defendant] was the actual killer and/or acted

---

[4] After receiving the petition, the trial court issued a minute order finding defendant made a prima facie showing of entitlement to relief and setting a date for an evidentiary hearing. There is no indication in the record, however, that any such hearing took place. Instead, after issuance of the minute order (and after the date set for the evidentiary hearing), the People filed the opposition to defendant's section 1172.6 petition that we next describe.

4

with malice aforethought, satisfying Penal Code sections 188 and 189." In reply, defendant argued the version of CALJIC No. 8.80 given to the trial jury was ambiguous, as a prior decision by our Supreme Court so found. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 180-181 (*Letner and Tobin*).) Specifically, defendant explained the instruction as given did not inform the jury what it must find about defendant's mental state if the jury concluded defendant was liable as an aider and abettor.

### D. The Trial Court's Ruling

Attorneys for the parties appeared in court in January 2022 after the People's opposition and defendant's reply had been filed. The trial court stated the purpose of the hearing was "to see whether or not [defendant] has shown a prima facie case so that his [section 1172.6] petition can move forward."

The trial court heard argument, mainly focused on the issue of whether the jury's special circumstance true findings foreclosed any possibility of relief in light of the instructions— particularly CALJIC No. 8.80—given to the trial jury. The trial court found that CALJIC No. 8.80 was "perfectly clear" in informing the trial jurors that "if they found that [defendant] was an aider and abett[o]r, that they had to find . . . beyond a reasonable doubt that . . . defendant, with the intent to kill[,] aided and abetted an actor in commission of the murder in the first degree." Confronted with the *Letner and Tobin* holding that the instruction was not so clear, the trial court stated it simply disagreed and believed—in its own view as a judicial officer—that CALJIC No. 8.80 provides only two options: a finding that the defendant is the actual killer (in which case no mental state finding need be made) or a finding that the defendant was an

aider and abettor (in which case the instruction, in the trial court's view, requires a finding of intent to kill to find the special circumstance true). The court accordingly found defendant did not make a prima facie case for relief because it thought the jury's special circumstance finding barred relief as a matter of law. The court denied the section 1172.6 petition.

## II. DISCUSSION

The trial court prematurely denied defendant's section 1172.6 petition; the trial jury's special circumstance findings do not establish he is ineligible for relief as a matter of law. The CALJIC No. 8.80 instruction that the jury was given has been held ambiguous by our Supreme Court and the trial court's disagreement with that conclusion is of no significance. Indeed, the Attorney General does not dispute on appeal that the instruction itself is ambiguous about whether intent to kill must be found if the jury were certain defendant was an aider and abettor. Instead, the Attorney General argues the prosecutor's closing argument during trial and the jury's true finding on a firearm use enhancement practically resolve the instructional ambiguity and suffice to support the trial court's finding that defendant is ineligible for relief as a matter of law. We hold that is not enough—the prima facie threshold was set "very low" (*People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*)), the jury was not bound to accept the prosecutor's argument, and a firearm use true finding (which can rest on mere display of a firearm) does not establish defendant had the intent to kill or was the actual killer.

6

*A.     Section 1172.6*

Under section 1172.6, "person[s] convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter," may file a petition to have that conviction vacated under certain circumstances. (§ 1172.6, subd. (a).) "After the parties have had an opportunity to submit briefing[ ], the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).) The bar for this prima facie showing was "'intentionally and correctly set very low.'" (*Lewis*, *supra*, 11 Cal.5th at 972.)

"A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that (1) the petitioner was the actual killer, or (2) the petitioner was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree, (3) the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life, or (4) the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

7

## B. *Defendant is Not Ineligible for Relief as a Matter of Law*

The instruction patterned on CALJIC No. 8.80 that was given to defendant's trial jury stated in relevant part: "If you find beyond a reasonable doubt that the defendant was either the actual killer or an aider or abettor, but you are unable to decide which, then you must also find beyond a reasonable doubt that the defendant with intent to kill aided and abetted an actor in commission of the murder in the first degree, in order to find the special circumstance to be true. On the other hand, if you find beyond a reasonable doubt that the defendant was the actual killer, you need not find that the defendant intended to kill a human being in order to find the special circumstance to be true."

Our Supreme Court has explained an instruction in this form is ambiguous because it does not clearly inform a jury what it must find about a defendant's mental state if the jury is *certain* that defendant was an aider and abettor in a charged murder (i.e., not the actual killer and not unsure whether the defendant was the actual killer or an aider and abettor). In the words of our Supreme Court in *Letner and Tobin*: "[T]he flaw in this instruction . . . is that it failed to instruct the jury explicitly that, under then existing law, an aider and abettor must have had the intent that the victim be killed in order for the special circumstance allegation to be true. [Citation.] The jury was told that if it determined one of the defendants was the actual killer, intent to kill was not required, and that if it could not decide whether one of the defendants was the actual killer or an aider and abettor, it must find intent to kill in order to make a true finding. The jury, however, was not informed what was required in the event the jury determined that a particular defendant was

8

an aider and abettor.  The omission of this third alternative made the instruction ambiguous." (*Letner and Tobin, supra*, 50 Cal.4th at 180-181, fn. omitted.)  Accordingly, looking at the instruction alone, we cannot be confident the jury's special circumstance true findings are necessarily predicated on a finding defendant intended to kill Stevenson or the other victims (or that he was Stevenson's actual killer).

The Attorney General does not contend otherwise.  Instead, the Attorney General endeavors to import the *Letner and Tobin* court's harmlessness analysis of the instructional error in that direct appeal for his use in this section 1172.6 proceeding.  Specifically, the Attorney General points to a snippet of the closing argument of the trial prosecutor and argues that must have cured the ambiguity about whether the jury must find intent to kill if it believed defendant was an aider and abettor.[5] We are not called to perform a harmlessness analysis in this appeal, however.  Instead, we decide only whether the People proved defendant is ineligible for section 1172.6 relief as a matter of law—and the prosecutor's argument is insufficient for that purpose.  Courts "'presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' (*People v. Clair* (1992) 2 Cal.4th 629, 663, fn. 8.)  '[P]rosecutorial commentary should not be given undue weight in analyzing how a reasonable jury

---

[5]     During closing argument, the prosecutor told the jury: "if you think [appellant] was not the actual shooter, but was an aider and abettor, . . . one [of] the elements that you have to find is that [appellant] actually intended to kill—had an actual intent to kill [the victims]."

understood . . . instructions. Juries are warned in advance that counsel's remarks are mere argument, missteps can be challenged when they occur, and juries generally understand that counsel's assertions are the "statements of advocates." Thus, argument should "not be judged as having the same force as an instruction from the court."' [Citation.]" (*People v. Cortez* (2016) 63 Cal.4th 101, 131.)

Again relying on the harmlessness analysis in *Letner and Tobin*, the Attorney General also argues it is unlikely the jury felt compelled to resolve any possible ambiguity with regard to the intent required for an aider and abettor. (*Letner and Tobin*, *supra*, 50 Cal.4th at 182 [jury unlikely to feel compelled to resolve ambiguity where there were two defendants on trial and there was insufficient evidence to prove one of the two defendants was the actual killer].) Even assuming this sort of harmlessness analysis is a reliable guide here, the circumstances in this case are still quite different.

There was little evidence at defendant's trial about who actually killed Barnes and Brown inside the motel room, so defendant's special circumstances liability for those murders must have been predicated on direct aider or abettor liability. That alone would have required resolution of the CALJIC No. 8.80 instructional ambiguity. As to Stevenson, there was evidence defendant was the shooter, but that evidence was contested and the People have never argued below or in this court that defendant is ineligible for section 1172.6 relief as a matter of law as Stevenson's actual killer.

Finally, insofar as the Attorney general would also point to the jury's personal *use* of a firearm finding as demonstrating the jury must have found defendant had the intent to kill, the

10

contention is unpersuasive. To find the firearm use allegation true, the jury was only required to find that defendant displayed a firearm in a menacing way, intentionally fired it, or intentionally struck or hit someone with it. The jury was not required to specifically find which of those actions defendant took. The jury could have found that defendant displayed the firearm in a menacing manner in the course of the underlying crimes while never actually firing it. Further, even if he had fired the gun, that does not necessarily mean that he intended to kill anyone.

Because there is no valid basis to determine the trial jury must have found defendant harbored an intent to kill, there is no basis for holding defendant is ineligible for section 1172.6 relief. That determination must come, if at all, after issuance of an order to show cause and further proceedings described by statute.

11

## DISPOSITION

The order denying defendant's petition for resentencing under section 1172.6 is reversed and the cause is remanded with directions to issue an order to show cause under section 1172.6, subdivision (c) and to thereafter proceed as required by section 1172.6, subdivision (d).


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:



RUBIN, P. J.



KIM, J.